IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| RIDGECREST ESTATES, L.P., | ) | Case No. 13-49315-399 |
| | ) | Chapter 11 |
| Debtor. | ) | Honorable Barry S. Schermer |
| | ) | |
| IN RE: | ) | Case No. 13-49316-399 |
| | ) | Chapter 11 |
| LOST TREE SOUTH, L.P., | ) | Honorable Barry S. Schermer |
| | ) | |
| Debtor. | ) | |
| | ) | Hearing Date:  October 15, 2013 |
| | ) | Hearing Time:  9:30 a.m. |

**MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION**

**COME NOW**, Lost Tree South, L.P. ("**Lost Tree**") and Ridgecrest Estates, L.P. ("**Ridgecrest**" and with Lost Tree, "**Debtors**"),[1] who file this *Motion for Interim and Final Orders Authorizing Use of Cash Collateral and Granting Adequate Protection* (the "**Motion**") seeking entry of interim and final orders authorizing the Debtors to utilize cash collateral of secured creditors to continue post-petition operations.

### JURISDICTION AND VENUE

1. The Court has jurisdiction over the subject matter of this Motion pursuant to 28 U.S.C. §1334(b) and the standing order of reference of the District Court.  This matter is a core proceeding. 28 U.S.C. §157(b)(2).  The statutory predicates for the relief sought herein are section 363 of the Bankruptcy Code and Rule 4001(b) of the Federal Rules of Bankruptcy Procedure.

---

[1] Debtors have filed a *Motion for Joint Administration in each of the above cases*.

**BACKGROUND**

2. On October 11, 2013, Debtors filed their voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "**Petition Date**"). Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No creditors' committees have been appointed in these cases.

3. Lost Tree is a limited partnership organized under the laws of the State of Missouri. Lost Tree owns an apartment complex (the "**Lost Tree Apartments**") located in the Branson, Missouri area which provides affordable housing to low and middle income individuals.

4. Ridgecrest is a limited partnership organized under the laws of the State of Missouri. Ridgecrest owns an apartment complex (the "**Ridgecrest Apartments**" and with the Lost Tree Apartments, the "**Apartments**") located in the Branson, Missouri area which provides affordable housing to low and middle income individuals.

5. Debtors have separate general partners, but the managing member of each general partner, and the person who signed the petitions, is the same person, John Harpole. Additionally, Debtors share the same "Special Limited Partner," WNC Housing, LP.

6. Initial construction of the Apartments was financed in part through the sale of tax-beneficial bonds. U.S. Bank National Association ("**U.S. Bank**") is the owner and indenture trustee of both Debtors' bonds. On July 11, 2013, at the request of U.S. Bank, Yarco Company, Inc. (the "**Receiver**") was appointed as receiver of the "Property" and "Associated Property" of the Debtors, as defined in the applicable orders, by the 38th Judicial Circuit Court for the State of Missouri.

**A.  Ridgecrest Bonds and Cash Collateral**

7. On October 1, 2006, Ridgecrest entered into that certain *Loan Agreement* (the "**Ridgecrest LA**") with The Industrial Development Authority of the County of Taney, Missouri (the "**Development Authority**"). Pursuant to the Ridgecrest LA, the Development Authority issued those certain Multifamily Housing Revenue Bonds (Ridgecrest Estates Project) Series 2006A in the principal amount of $6,900,000 (the "**Ridgecrest Bonds**").[2] U.S. Bank was to serve as indenture trustee under the Ridgecrest Bonds and, pursuant to the Ridgecrest LA, U.S. Bank purchased the Ridgecrest Bonds and all rights thereunder. As of July 31, 2013, the total outstanding balance due under the Ridgecrest Bonds is $6,581,540.01 (the "**Ridgecrest Pre-Petition Indebtedness**").

8. U.S. Bank asserts that repayment of the Ridgecrest Bonds is secured by that certain *Deed of Trust, Security Agreement, Assignment of Leases and Rents and Fixture Filing* (the "**Ridgecrest DOT**"). Pursuant to the Ridgecrest DOT, U.S. Bank asserts a first lien and security interest on the Ridgecrest Apartments and, *inter alia*, all fixtures, goods, equipment inventory located at the Ridgecrest Apartments. Additionally, U.S. Bank asserts a security interest in, *inter alia*, Ridgecrest's accounts, general intangibles, chattel paper, deposit accounts, investment property, instruments and documents (collectively, the "**Ridgecrest Pre-Petition Collateral**"). Pursuant to the Ridgecrest DOT, U.S. Bank asserts a lien on the cash proceeds of the Ridgecrest Pre-Petition Collateral (the "**Ridgecrest Cash Collateral**"). Finally, U.S. Bank asserts that it has an absolute assignment of the rents attributable to the Ridgecrest Apartments.[3]

---

[2] Pursuant to the Ridgecrest LA, the Development Authority also issued those certain Multifamily Housing Revenue Bonds (Ridgecrest Estates Project) Series 2006B in the principal amount of $4,350,000, but those bonds were repaid in 2009.

[3] Debtors assert that notwithstanding that the Ridgecrest DOT contains language that purports to be an "absolute assignment of rents" such "absolute assignment" is ineffective and that U.S. Bank merely has an asserted security interest in rents attributable to the Ridgecrest Apartments. *In re Prospect Studios, L.P.*, 478 B.R. 367, 370 (Bankr. W.D. Mo. 2012).

**B. Lost Tree Bonds and Cash Collateral**

9. On July 1, 2006, Lost Tree entered into that certain *Loan Agreement* (the "**Lost Tree LA**") with Missouri Housing Development Commission (the "**MHDC**"). Pursuant to the Lost Tree LA, the MHDC issued those certain Multifamily Housing Revenue Bonds (Lost Tree South Apartments Project) Series 2006V-A in the principal amount of $3,200,000 (the "**Lost Tree Bonds**").[4] U.S. Bank was to serve as indenture trustee under the Lost Tree Bonds and, pursuant to the Lost Tree LA, U.S. Bank purchased the Lost Tree Bonds and all rights thereunder. As of July 31, 2013, the total outstanding balance due under the Ridgecrest Bonds was $2,974,062.14 (the "**Lost Tree Pre-Petition Indebtedness**").

10. U.S. Bank asserts that repayment of the Lost Tree Bonds is secured by that certain *Deed of Trust, Security Agreement, Assignment of Leases and Rents and Fixture Filing* (the "**Lost Tree DOT**"). Pursuant to the Lost Tree DOT, U.S. Bank asserts a first lien and security interest on the Lost Tree Apartments and, *inter alia*, all fixtures, goods, equipment and inventory located at the Lost Tree Apartments. Additionally, U.S. Bank asserts a security interest in, *inter alia*, Lost Tree's accounts, general intangibles, chattel paper, deposit accounts, investment property, instruments and documents (collectively, the "**Lost Tree Pre-Petition Collateral**"). Pursuant to the Ridgecrest DOT, U.S. Bank asserts a lien on the cash proceeds of the Lost Tree Pre-Petition Collateral (the "**Lost Tree Cash Collateral**").[5] Finally, U.S. Bank asserts that it has

---

[4] Pursuant to the Lost Tree LA, MHDC also issued those certain Multifamily Housing Revenue Bonds (Lost Tree South Apartments Project) Series 2006V-B in the principal amount of $1,200,000, but those bonds were repaid in 2008.

[5] A likely affiliate or insider of Lost Tree, Lost Tree Condominium, Inc., asserts a second priority lien and security interest on the same real and personal property, including accounts, over which U.S. Bank asserts a first priority lien and security interest, including the Lost Tree Cash Collateral. On information and belief, Lost Tree Condominium, Inc. is undersecured. Further, it consents to Lost Tree's use of the Lost Tree Cash Collateral. Attached hereto as Exhibit "A" is proof of Lost Tree Condominium, Inc.'s consent to Lost Tree's use of the Lost Tree Cash Collateral.

an absolute assignment of the rents attributable to the Lost Tree Apartments.[6]

### RELIEF REQUESTED

11. Section 363 of the Bankruptcy Code authorizes a debtor to use cash collateral if (i) those having an interest in such cash collateral consent, or (ii) the Court authorizes use of cash collateral. 11 U.S.C §363(c)(2). Even with consent, Rule 4001 functionally requires there be an order approving the parties' agreement to use of cash collateral, accordingly, the Debtors request authority to use Cash Collateral.

12. The Ridgecrest Cash Collateral and Lost Tree Cash Collateral provide the general working capital for the Ridgecrest's and Lost Tree's operations, respectfully. The outstanding Ridgecrest Pre-Petition Indebtedness due to U.S. Bank under the Ridgecrest Pre-Petition Indebtedness was less than $6,581,540.01 as of the Petition Date, and the outstanding Lost Tree Pre-Petition Indebtedness due to Lost Tree under the Lost Tree Pre-Petition Indebtedness was less than $2,974,062.14 as of the Petition Date. Debtors assert that U.S. Bank is an undersecured creditor as to both Debtors.

13. U.S. Bank, by securing the appointment of a receiver and seeking to foreclose pre-petition, has clearly indicated that it will oppose Debtors' use of the Ridgecrest Cash Collateral and Lost Tree Cash Collateral. The Debtors' business requires access to the Ridgecrest Cash Collateral and Lost Tree Cash Collateral in as much as the Debtors have determined, in their business judgment that they will be unable to operate generally without use of such cash collateral.

---

[6] Debtors assert that notwithstanding that the Lost Tree DOT contains language that purports to be an "absolute assignment of rents" such "absolute assignment" is ineffective and that U.S. Bank merely has an asserted security interest in rents attributable to the Lost Tree Apartments. *In re Prospect Studios, L.P.*, 478 B.R. 367, 370 (Bankr. W.D. Mo. 2012).

14. Without authority to use the Ridgecrest Cash Collateral and Lost Tree Cash Collateral, Debtors will not be able to meet simple operating needs, including future payroll, utilities (and deposits), insurance, and/or otherwise comply with state and local ordinances to maintain and preserve the value of its assets.[7]

15. Attached hereto as **Exhibit "B"** are separate budgets for Ridgecrest and Lost Tree setting forth the particular expenses anticipated to be necessary to be paid from October14through October 31, 2013.

16. Under Rule 4001(b)(2), a final hearing on a motion for authority to use cash collateral can be commenced no earlier than 14 days after service of the motion, but the Court may conduct a preliminary hearing before the 14-day period expires. In such a situation, the Court may authorize the use of only that amount of cash collateral as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

17. Payment of the expenses identified on the budgets set forth in Exhibit "B" is necessary to avoid immediate and irreparable harm to the estates pending opportunity for a final hearing herein. The limited interim use of the Ridgecrest Cash Collateral and Lost Tree Cash Collateral to pay these expenses is vital to maintaining the value of the Debtors' assets.

18. Ultimately, the use of the Ridgecrest Cash Collateral and Lost Tree Cash Collateral on a final basis will maintain the going concern value of Debtors' business and improve the ability of Debtors to facilitate an effective and timely reorganization. Debtors will be able to keep their property insured, safe, and secure, as well as, maintain ongoing utilities for

---

[7] Because Debtors anticipate that the Receiver will file a motion asking that the Court excuse it from the turnover requirements of Code § 543, Debtors are filing a motion for authority to secure DIP financing contemporaneously herewith, so that they have sufficient access to cash to make all necessary payments during the pendency of any Code § 543 motions or the receipt of sufficient rental revenue post-petition.

the health and safety of their residents. These are all expenses necessary to preserve the value of the Debtors' property. Without such minimal financial accommodations, Debtors' residents health and safety will be put in jeopardy, Debtors could not comply with state and local law and Debtors may lose tenants, ultimately jeopardizing any hope of effective reorganization.

**OFFER OF ADEQUATE PROTECTION FOR INTERIM USE OF CASH COLLATERAL**

19. Use of cash collateral may be prohibited or conditioned, however, upon request by a party having an interest in such cash collateral as is necessary to adequately protect its interest. 11 U.S.C. §363(c)(3). The Court may authorize use of cash collateral upon a showing that those with an interest in the cash collateral are adequately protected. 11 U.S.C. §§ 363(c)(2)(B) and 363(e). Adequate protection requires consideration of the creditor's aggregate collateral position, not simply protection of its lien on cash or accounts. Ridgecrest seeks authority to use the Ridgecrest Cash Collateral and Lost Tree seeks authority to use the Lost Tree Cash Collateral; Ridge Crest and Lost Tree do not seek authority to use the other Debtor's cash collateral.

20. Debtors asserts that U.S. Bank is undersecured as to both Debtors and that U.S. Bank is not entitled to payment of reasonable fees and expenses under section 506(c) of the Bankruptcy Code during the pendency of this bankruptcy proceeding. As adequate protection for any diminution of U.S. Bank's interest in the pre-petition and post-petition collateral to which its liens attach, to the extent U.S. Bank holds valid, perfected and unavoidable security interests in property of Debtors' estates, without any requirement to file any additional documents to perfect such interests, Debtors hereby tender adequate protection in the form of a post-petition security interest upon all post-petition property of the same kind and type that is subject to U.S. Bank's properly perfected pre-petition security interests, on a per entity basis (the "**Ridgecrest**

**Replacement Lien**" as to the replacement lien granted for use of the Ridgecrest Cash Collateral, the "**Lost Tree Replacement Lien**" as to the replacement lien granted for use of the Lost Tree Cash Collateral, and collectively, the "**Replacement Liens**").

21. The Ridgecrest Replacement Lien for use of the Ridgecrest Cash Collateral shall extend to: (a) all property acquired by Ridgecrest, and its bankruptcy estate, of the kind or type that would otherwise constitute Ridgecrest Pre-Petition Collateral, (the "**Ridgecrest Replacement Collateral**"); (b) all products and proceeds of the Ridgecrest Replacement Collateral and the Ridgecrest Pre-Petition Collateral, of the kind or type that would otherwise constitute Ridgecrest Pre-Petition Collateral**.**  The Ridgecrest Replacement Lien granted hereby shall not extend to Chapter 5 causes of action and shall be limited in its scope to the decline, if any, in the value of U.S. Bank's collateral by virtue of Ridgecrest's post-petition use. The Ridgecrest Replacement Lien is without prejudice to any right, claim, or objection of Debtors or any other party regarding the extent, priority and validity of any lien or security interest securing the indebtedness of any allegedly secured creditor.  The Ridgecrest Replacement Lien in any kind of property shall have the same validity and priority as U.S. Bank's liens and/or security interests had in that kind of property prior to the Petition Date, if any or as agreed to be granted herein.

22. The Lost Tree Replacement Lien for use of the Lost Tree Cash Collateral shall extend to:  (a) all property acquired by Lost Tree, and its bankruptcy estate, of the kind or type that would otherwise constitute Lost Tree Pre-Petition Collateral, (the "**Lost Tree Replacement Collateral**"); (b) all products and proceeds of the Lost Tree Replacement Collateral and the Lost Tree Pre-Petition Collateral, of the kind or type that would otherwise constitute Lost Tree Pre-Petition Collateral**.**  The Lost Tree Replacement Lien granted hereby shall not extend to Chapter

5 causes of action and shall be limited in its scope to the decline, if any, in the value of U.S. Bank's collateral by virtue of Lost Tree's post-petition use. The Lost Tree Replacement Lien is without prejudice to any right, claim, or objection of Debtors or any other party regarding the extent, priority and validity of any lien or security interest securing the indebtedness of any allegedly secured creditor.  The Lost Tree Replacement Lien in any kind of property shall have the same validity and priority as U.S. Bank's liens and/or security interests had in that kind of property prior to the Petition Date, if any or as agreed to be granted herein.

23. For the avoidance of doubt, the Ridgecrest Replacement Lien for use of the Ridgecrest Cash Collateral only extends to the Ridgecrest Apartments and the same collateral that is covered by the Ridgecrest DOT, and the Lost Tree Replacement Lien for use of the Lost Tree Cash Collateral only extend to the Lost Tree Apartments and the same collateral that is covered by the Lost Tree DOT. The Ridgecrest Replacement Lien for use of the Ridgecrest Cash Collateral does not extend to the Lost Tree Apartments or any of the Lost Tree Pre-Petition Collateral or its proceeds and the Lost Tree Replacement Lien for use of the Lost Tree Cash Collateral does not extend to the Ridgecrest Apartments or any of the Ridgecrest Pre-Petition Collateral or its proceeds.

24. Nothing in this offer shall preclude the Debtors from seeking a carve-out for the fees and expenses of its professionals from U.S. Bank's collateral as may be appropriate.

25. Nothing in this offer shall preclude Debtors from improving, replacing, rehabilitating, or renovating the Ridgecrest Apartments or Lost Tree Apartments, to the extent that any such expenditures are made from the respective Debtor's excess cash flow and directed to repairing, reconditioning, or improving the Ridgecrest Apartments or Lost Tree Apartments for the purpose of increasing productivity of such apartments and resultant cash flow. For the

avoidance of doubt, the excess cash flow of Ridgecrest may not be used to improve the Lost Tree Apartments, and the excess cash flow of Lost Tree may not be used to improve the Ridgecrest Apartments.

26. Given that U.S. Bank's interests are adequately protected and use of cash collateral is necessary for continuation of the Debtors' operations, it is in the best interests of Debtors and the Debtors' bankruptcy estates that Ridgecrest be authorized to use the Ridgecrest Cash Collateral and Lost Tree be authorized to use the Lost Tree Cash Collateral pursuant to the terms provided herein.  Accordingly, Debtors request that the Court authorize Ridgecrest to use the Ridgecrest Cash Collateral and Lost Tree to use the Lost Tree Cash Collateral for the purpose of paying necessary business expenses pursuant to section 363 of the Bankruptcy Code, and that the Court grant U.S. Bank the Replacement Liens on post-petition assets as described above, and that such relief be granted on an interim basis to avoid immediate and irreparable injury to Debtors and their estates.

### MONTHLY BUDGET PROCEDURES / OTHER PROVISIONS

27. Ridgecrest will agree that the following will constitute events of default (each a "**Ridgecrest Event of Default**"):

    a. Ridgecrest's use or transfer of Ridgecrest Cash Collateral in excess of the amounts permitted under the budget or for purposes not specifically authorized under the budget (however, a ten percent (10%) global variance will not constitute a default);

    b. Entry of an order providing for the conversion of Ridgecrest's case to a chapter 7 case or for dismissal thereof;

    c. Lapse of adequate loss insurance on the Ridgecrest Pre-Petition Collateral, if any

    is required;

    d. Lost Tree's use of the Ridgecrest Cash Collateral; or

    e. Ridgecrest's material failure to keep or observe any other provision of an order entered hereon.

28. Lost Tree will agree that the following will constitute events of default (each a "**Lost Tree Event of Default**"):

    f. Lost Tree's use or transfer of Lost Tree Cash Collateral in excess of the amounts permitted under the budget or for purposes not specifically authorized under the budget (however, a ten percent (10%) global variance will not constitute a default);

    g. Entry of an order providing for the conversion of Lost Tree's case to a chapter 7 case or for dismissal thereof;

    h. Lapse of adequate loss insurance on the Lost Tree Pre-Petition Collateral, if any is required;

    i. Ridgecrest's use of the Lost Tree Cash Collateral; or

    j. Lost Tree's material failure to keep or observe any other provision of an order entered hereon.

29. Default by one Debtor shall not constitute default by the other Debtor.

30. Debtors agree that any interim relief granted on the Motion shall be expressly without prejudice to the rights of parties in interest at a final hearing on the Motion.

31. Debtors propose that final authority to use the Ridgecrest Cash Collateral and Lost Tree Cash Collateral be authorized in accordance with the following procedures:

    (a) Prior to entry of an interim order authorizing use of the Ridgecrest Cash Collateral and Lost Tree Cash Collateral each Debtor shall file a separate

        budget for the period November 1, 2013 through November 30, 2013.

(b)    After entry of a final order authorizing use of the Ridgecrest Cash Collateral and Lost Tree Cash Collateral, and beginning with the budget for the month of November of 2013, each Debtor shall file a separate proposed monthly budget with the Court and serve same on U.S. Bank, the U.S. Trustee, and counsel for any official committee (and if none has been appointed, to the 20-largest unsecured creditors) by the Court's electronic noticing system, e-mail or fax, within at least five (5) business days prior to the end of the applicable budget cycle (the "**Proposed Monthly Budgets**"). Proposed Monthly Budgets shall represent the next monthly period of operations.

(c)    U.S. Bank shall have three (3) business days, from the date the Proposed Monthly Budgets are filed, to review, and if appropriate, file a written objection thereto, and serve same on the Debtors and Debtors' counsel. U.S. Bank may object to one Debtor's Proposed Monthly Budget, while consenting to the other Debtor's Proposed Monthly Budget.

(d)    If no objection to a Debtor's Proposed Monthly Budgets is filed, then that Debtor's Proposed Monthly Budget shall become the approved budget for the next month.

(e)    If an objection to a Debtor's Proposed Monthly Budget is filed, then cash collateral usage shall be allowed in accordance with the limitations in that Debtor's budget approved for the prior month until the Court has an opportunity to hear the objection. Debtors shall not oppose any request for emergency hearing on such objection.

(f)    Nothing in this procedure shall prohibit U.S. Bank, or any other secured party with an interest in the Ridgecrest Cash Collateral and Lost Tree Cash Collateral from seeking to require a different budgeting procedure, provided that such secured party files an appropriate motion therefore.

(g)    Each Proposed Monthly Budget shall set forth separately, any requested "carve out" funding of Debtors' professional fees and expenses in this case, if any, for the applicable month. The failure of U.S. Bank, or any other party in interest, to object to the amount of such proposed payment shall not constitute a waiver of such party's right to object to the final fee application of such professional on any permissible ground.

## NOTICE

32. Notice of this Motion has been provided to (a) Robert O. Schock, CPM, CCIM, Senior Vice President for the Yarco Companies, the Receiver of both Debtors, by fax at (816)

561-3155 and regular U.S. mail postage pre-paid at 7920 Ward Parkway, Kansas City, Missouri 64114; (b) Mark V. Bossi, Thompson Coburn, LLP, counsel for U.S. Bank Court's by the Court's CM/ECF system, email or regular U.S. mail postage pre-paid; (c) the U.S. Trustee, by the Court's CM/ECF system, email at Paul.A.Randolph@usdoj.gov and regular U.S. mail postage pre-paid; (c) the 20 largest unsecured creditors, by fax where such information is known, or by U.S. mail; (d) those persons who have formally appeared and requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure, by the Court's CM/ECF system, fax, email or regular U.S. mail postage pre-paid; and (e) all governmental agencies required to receive notice under the Federal Rules of Bankruptcy Procedure or the Local Bankruptcy Rules, by U.S. mail (collectively, the "**Notice Parties**").

33. Debtors submit that in view of the relief requested and the circumstances herein, such notice is sufficient under Rule 4001 of the Federal Rules of Bankruptcy Procedures and any applicable local rule, under the circumstances, and that no other or further notice need be provided.

34. Debtors respectfully request that the Court set the Motion for an interim hearing on an emergency basis and enter an interim order granting the Debtors' limited use of the Ridgecrest Cash Collateral and Lost Tree Cash Collateral, pursuant to the terms provided for herein to avoid immediate and irreparable harm to the Debtors, their estates, and all of their creditors. Debtors request that the Court set a final hearing to consider use of the Ridgecrest Cash Collateral and Lost Tree Cash Collateral and authorize interim use of the Ridgecrest Cash Collateral and Lost Tree Cash Collateral through such date, at which time Debtors would request final authority to use the Ridgecrest Cash Collateral and Lost Tree Cash Collateral on a go-forward basis throughout the pendency of these cases, pursuant to the terms provided herein,

subject to modification or termination by further order of the Court, or upon a finding, after notice and a hearing, that U.S. Bank or any other secured creditors' interests are no longer adequately protected.

**WHEREFORE,** the Debtors request that the Court enter an order authorizing Ridgecrest's use of the Ridgecrest Cash Collateral and Lost Tree's use of the Lost Tree Cash Collateral on an interim and final basis, pursuant to the terms set forth herein and for such other further or relief as is just and equitable.

**DATED**: October 11, 2013.

        Respectfully submitted by,

*//s// Brian J. LaFlamme*_____
DAVID A. SOSNE #28365MO
BRIAN J. LAFLAMME #49776MO
**SUMMERS COMPTON WELLS LLC**
8909 Ladue Road
St. Louis, Missouri 63124
Telephone: (314) 991-4999
Facsimile: (314) 991-2413
Email: dasattymo@summerscomptonwells.com
Email: blaflamme@summerscomptonwells.com


*//s//E. P. Keiffer*_____
E. P. Keiffer (TX Bar No. 11181700) (*pro hac vice* pending)
Shane A. Lynch (TX Bar No. 24065656) (*pro hac vice* pending)
**WRIGHT GINSBERG BRUSILOW P.C.**
325 N. St. Paul Street, Suite 4150
Dallas, Texas 75201
Telephone: (214) 651-6500
Facsimile: (214) 744-2615
Email:pkeiffer@wgblawfirm.com
Email: slynch@wgblawfirm.com

**PROPOSED ATTORNEY FOR DEBTORS**